We will call our first case, the only case. Yes, correct. Armand Jones. People v. Armand Jones. Would both attorneys that are going to present argument in this case step up for the record here and identify yourselves? My name is Deborah Kuhn. I'm an attorney for the Office of the State Good morning to both of you. We will allow each side about 20 minutes to present oral argument. From that, Ms. Pugh, you may save out some time for rebuttal. And I would also ask the attorneys to try to speak into the microphone. We have some individuals watching, in particular some students, so we'd like them to be able to hear everything that you argue today. So with that, Ms. Kelly, you may be seated, and Ms. Pugh, you may proceed. So good morning, court. It is a court. My name is Deborah Kuhn, and I represent the appellant Armand Jones. Now, I want to begin by acknowledging that deference does have its limits. This court is not required to accept testimony that is improbable or unconvincing, and this court has a duty to look at all the evidence and see if the court was correct in finding the defendant guilty beyond a reasonable doubt. Now, in many ways, this case is very ordinary. We have a 22-year-old guy walking down the street, no felony convictions, arrested for carrying a gun with no Floyd card, no concealed carry license. But the unusual part of this case is the testimony from the sole witness for the state, the officer who testified. His testimony was very stilted and repetitive, and he told a strange story about this one fluid motion, and he told it in a strange way. And so this is why we're here today. So, Ms. Pugh, the only way we can look at what his testimony is is what his words were, correct? And he continuously described a fluid motion. Right. I'm assuming he did some type of demonstration along with that fluid motion, correct? There was no real indication in the record. There was no indication, certainly, that he stepped down. Well, they didn't make a record of what he was saying. Right. If there was any physical demonstration, there was no record of it, correct? Right. And typically, in my experience, when it seems that somebody actually got down off of the witness stand, that does show up in the record, as opposed to just sort of sitting there and just gesturing one fluid motion. Because the issue with this one fluid motion is if you take the officer's testimony at face value, that there's this outer garment, shiny object, left sock, one fluid motion. These sort of terms that he just repeats in this very narrow way throughout. I mean, without the podium here, without wearing a pantsuit, this is a more difficult demonstration by me than I would have liked. And so if you imagine that the defendant is wearing tube socks. He said he was wearing ankle socks, which presents its own set of problems. But if you imagine that he is wearing tube socks, and he's wearing these long pants, it's March at night, presumably. Is it unrebutted, or is it simply that that's what the defendant testified to? Did the officer say in particular what kind of form he had, other than saying an outer garment? I don't know about the pants. No, the officer only said outer garment. They couldn't discern whether it was a jacket or a sweatshirt. As far as pants, no. But I think it's reasonable to assume that he wasn't wearing shorts. If he were wearing tube socks, I mean, for what would be unusual, he would be wearing shorts in March at 11 o'clock at night. And also, if he were wearing shorts, then the officer would be able to see the gun in the socks the whole time. And so presumably that would be part of the testimony. And so if we do assume that he is wearing these loose pants, he described wearing jogging pants, which are loose. But you imagine one fluid motion. So the officer doesn't know where the gun is coming from in the outer garment. So it's just outer garment, doesn't know where it comes from. And keep in mind, they're in a marked car, by the way, too. If I can interrupt for one moment, when he testified about the officer now, when he testified that the defendant put this object, shiny object, in the socks, did he indicate that the defendant was walking? He wasn't running at that time. No, he was walking, but he didn't break stride. And that's sort of part of the interesting part of the story, along with one fluid motion. So if you imagine taking this shiny object and trying to tuck it into a tube sock. Now, it has to be a tight tube sock, because although this is a very small gun, it was fully loaded. It had nine rounds in it, or seven rounds in it. And so it would be heavy. So in order to... Is there any testimony to support that? That there are seven rounds? No, that it was heavy. How heavy? It was described like the size of a cell phone. Well, it is very small, but if it's filled with bullets, it's going to be heavier than it would be if it were empty. And so there's no specific testimony about the weight of the bullets. But the weight of the bullets is, you know, from our own experience, is that the bullets have some weight. And so in order to be able to run with a fully loaded gun in your sock, the sock would have to be reasonably tight. And so if you're imagining walking, large car right over your left shoulder, walking, then you have to lift up your pant leg, then somehow get the gun into the very tight sock in order to be able to run. And you have to sort of ask, why is he doing this right in front of this police car? This is not... Well, is that your strongest point, that it was sort of improbable? Yes, everything about the story. I mean, the thing is, it's an improbable story, and it's told in such a narrow way, so the officer just doesn't want to deviate from it. He's got this story. Well, the defendant testified, though, too. The defendant testified, too. And so isn't it incumbent upon the trial court to say, okay, I've got this version, and I've got this version, and this is the one I find more credible? How can we do that on appeal? Well, on appeal, I mean, for one, it's not really an issue. When the state has the duty to prove the defendant guilty beyond a reasonable doubt, it's not an issue of simply is this one a little heavier than the other in terms of credibility weight. I mean, the state has the burden of proving him guilty beyond a reasonable doubt based on the officer's testimony. So it's irrelevant what the defendant testified? Well, it's not irrelevant. I mean, the case law shows that if the defendant is charged with a felony... So if the defendant takes the stand and the court finds him completely incredible for whatever basis, he doesn't make a record of the defendant having tics or whatever the court finds that renders his testimony incredible, then we're supposed to just say, well, he didn't make an adequate record, and we're reading this, and we think the officer was incredible, and we're going to reverse the conviction. That's kind of what you're asking us to do, isn't it? Well, I think in this case, this is one of these cases where you read the testimony and you're left with a lot of questions about what actually happened here. There are definitely problems with the defendant's testimony, no question. Definitely problems with the officer's testimony. So we're sort of left with what happened here, and what happened here is that a person who no longer had a felony conviction suddenly goes home. His life changed. He has a felony based on this very strange story that an officer told. You know, his story is not, the defendant's story is not completely solid either, but if you're looking at what's used to prove him guilty of a felony that will stay on this record for the rest of his life, this is very strange evidence. This is, if I were to be buying a used car from somebody... Is there any determinative factor here? Strange evidence? No. The fact that he testified and this finding of guilty will result in a felony conviction? No, it's just sort of to keep my mind at least on the stakes of what we're talking about here, that we have somebody who is being proved. The standard is beyond the reasonable doubt. Every single criminal case that we see, the stakes are high. Somebody's liberty is at stake. So where does that come in when we're evaluating whether the trial court had an adequate basis? Well, I think just to keep my mind on the stakes, especially because he had no previous felony conviction, so for him it does make a difference as opposed to being, you know, he was 12 or something like that. But no, focusing only on the evidence, we have a story about this one fluid motion. Talking again, it's very difficult to imagine how that could actually happen. And then again, one fluid motion removing it. And so just sort of what did the officer, why is the officer sticking to this particular story? It just raises a lot of questions about what he actually saw, what actually happened, and why he's so afraid to deviate from these very, very, like, stylized phrases that he uses repeatedly. Did you cite any cases that you think would help us write an opinion that would find this was improbable? I think the closest that we came is, I mean, because again, no doubt about it, a reasonable doubt argument like this is an uphill battle. There's no question. But Vasquez from the 2nd District from 1992 where it talks about the improbable testimony, a testimony that's contrary to human experience. What case are you talking about now? Vasquez, where it was a case where the court found that the testimony was contrary to human experience. What were those? Which one is that? It's from the 2nd District from 1992. I don't have my brief with me right now. I know. That's the, that was an aggravated criminal sexual assault case. Oh, yes. It's different for sure. And in that case, the court did find that the state hadn't proved the aggravated criminal sexual assault, but they did say that there was sufficient evidence to prove that the state had proved the criminal sexual abuse or aggravated sexual abuse and remanded it? No, I mean, this is a tough case, obviously, but. Ms. Pugh, do you have concerns about the statement that the officer testified to, the statement that defendants said he was holding the gun from Melvin and Melvin got the gun from Ralph? Was that statement tendered to the defense prior to trial? Oh, it was part of the, and I apologize for not referring to it in my opening brief. I was thinking only of memorialized statements that were actual trial evidence. But, yes, it was on the arrest report, so it definitely would have been handed over to, there was no indication in the record that the defense did not get the trial record or did not get the arrest report beforehand. What did you mean in your, did you reference that the officer didn't testify that it was memorialized? I said that he didn't testify that it was memorialized. And he didn't? No, he didn't testify that it was memorialized. But, no, as the statement pointed out at one point, though, I made the inappropriate jump in saying it wasn't memorialized, and I meant that in good faith. Yes. But it was incorrect because it was actually. Okay, I was very confused. I'm so glad you clarified that. Weren't there any drug cases you could find that might have gone your way? I mean, there are cases that happen before they get to the appeals case, before they get to the appeals court. You know, when you're looking at newspaper articles and things like that, you can find that. And you can see them in the law review articles. I mean, there was one of the law review articles referred to in the reply brief about the blue wall. And in those cases, you can see. But, I mean, in Illinois, there just really are not. We have a kind of a dearth of cases that address these issues in this way. Because we give deference to the trial court's determinations on factual matters. Is that not correct? This isn't unusual. You do do that, of course. But every court does that. But in this case, it really is an unusual case in terms of we have one officer testifying to the strange testimony.  I mean, the state can't say, well, actually, his testimony was very normal. His testimony made sense. There's no way of saying, oh, this one fluid motion actually makes sense. Because it doesn't. Should we take anything from the fact that there was another officer present, that the defendant testified, he gave a statement of everything that occurred, and then much of it was left unrebutted? Much of what the defendant? Yes. Well, I mean, I'm not saying that he was wearing tube socks, that he wasn't wearing tube socks. I misspoke. That he brought his socks to court. No, he brought his socks to court. No, he was very firm about these being the socks. But it would raise its own problems because, of course, it would be easier to do one fluid motion but harder to run. Most of his testimony, I mean, the state only brought this one witness and didn't have anyone to rebut it, to rebut anything that the defendant said. There are a lot of other things that you can sort of pick up on when you're reading the record about what happened when he was arrested. I mean, the defendant has a lot of, the defendant had a sort of different story that he didn't go into that much on testimony but about having been abused by the police and this kind of thing. I mean, it's a very, this case, it's sort of all around the edges. There's a lot of weirdness about it that doesn't make sense. Tell me, what is the standard of review here? Oh, the standard of review is that you have to abuse of discretion and that you have to, I mean, you have to find that there is no reasonable way. So we have to find that no judge would have done what this judge did. Well, no reasonable judge. No reasonable judge. And so we have to be clear there, no reasonable judge. Let me ask you this, during the trial of this matter, was there any demonstration by the defense as to show how improbable it is to put a gun into a sock? No, it seems like nobody really got up out of the sand. Well, would that be something that would be needed in a trial, if that's going to be your focus point in a trial, that it's totally improbable that it happened that way, to show a demonstration? There was no demonstration here, was there? No, there were a lot of things that this attorney did at trial that I wouldn't have done, that I also don't think really rose to the level of ineffective assistance of counsel, but that's certainly one of them. If he were to have worn, even if he were to have worn tube socks and not his ankle socks, if he were to have worn the same pants and shown, you know, with any kind of object. I mean, there wasn't even a sock produced as to what he was wearing, was there? Well, from the officers, no. I mean, the officer said that. Well, I mean, as far as the defense. Oh, no, the defense actually wore the socks into the courtroom that he claimed had been the socks that he was wearing that day. Well, but didn't he wear ankle socks into the courtroom? Right, and he claimed that he was wearing ankle socks that day and not tube socks. And so the officer said that he was wearing tube socks. He said that they were standard. He said left sock, left sock, tube sock. Then he said standard tube sock, but he also didn't know what color the tube sock was. Okay, so then it becomes a credibility determination by the judge. Right. We can't make credibility determinations from a cold record up here, can we? Well, you can in the sense that the strangeness of the officer's testimony. I mean, you can look at what the judge did and see whether his determination  Again, I'm under no illusions about what the standard is here or that this is a difficult case, but at the same time, when I read this record, you know, at the Office of the State Appellate Defender, when we read a record, we think, okay, should we be withdrawing from this case or is there really an issue here? And I looked at this and said, you know what, I know the standard is really hard, but this officer's testimony just does not sit right with me. We have this officer in a March car approaching this guy and telling this very strange story in a very strange way. If I were to meet anyone on the street who's telling me this strange story in such a strange and specific way, it would just raise a lot of questions and, honestly, it would raise a reasonable doubt at trial. And so this is the reason that we brought this issue, and there are bad facts, but we have this 22-year-old guy who was suddenly arrested and maintains his innocence, and we just don't really know what happened. And so, yes, of course, there's the duty to defer to the trial court, but there's also looking at what the officer actually said and whether you would believe someone who spoke to you who was trying to sell you a used car and said you used some strange stylized terms over and over again. Even if you really want to, you're like, hmm, I don't know. And so this is why this case raises questions. And so because of all of these reasons, we would ask that you would vacate the defendant's conviction. Now, moving on to fines and fees, I have... There has been a concession on the fines and fees. Right, exactly. Yes, there have. So I think that we will allow you some time for rebuttal, but I will advise... Okay, I just wanted to be sure, with Harvey having been decided, that this Court had no question on that? No, I mean, I think if they've conceded the error, we don't have to go any further. Okay, thank you. All right, thank you. Ms. Kelly? You did concede... We did. ...to these issues, correct? We did, correct. So we won't need to go into that. All right, you may proceed. Good morning. Assistant State's Attorney Nina Kelly, on behalf of the people of the State of Illinois, may it please the Court. The evidence in this case amply supports the defendant's conviction for two counts... Why do you think that the officer's testimony that it was a tube sock and... Don't you think it is a little bit ridiculous? No. In fact, defense now claims that his statements are too specific, but in the briefs, apparently they were too vague. The officers consistently stated that the socks the defendant was wearing was a tube sock. Nothing about his testimony is doubtful, much less contrary to human experience. Why would he make up this strangely specific story? Well, how would he see the tube socks if this man was wearing long pants, jogging pants? Because in order to get the gun into the sock, he presumably would have had to lift up the pants. We also don't have any testimony as to the length of the pants. Did he also say that he had no idea what the color of the sock was, and yet he could tell it was a tube sock? Yes. Isn't that inconsistent? Well, there was no cross-examination as to what did you mean. Was it gray or white? No, but the record does speak to this, and he says that it was a tube sock, and yet he doesn't know what color it was at all. I mean, there's a big difference between black and white. There is, but the question wasn't whether it was black and white. Moreover, if he was making this story up... Why would he know what color the sock was? And he said no. But at the same time, he also said it was a tube sock. So there's a major inconsistency in saying, on the one hand, I could tell it was a tube sock, but I don't know what color it was. I think the distinction is the fact that he knew it was a tube sock and not an ankle sock. It was dark. Yes, there was lighting. As to what color the sock was, was not very relevant, because he could see that the gun was going into the man's sock that was not an ankle sock. It was high enough for the gun to fit inside. Moreover, if he was making this story up, why would he not have just said, yes, there was a white tube sock, which he was able to see later at the station anyway? But it was relative to the credibility of the witnesses. Well, it was those whose credibility that he was willing to say, I don't know what color the sock was at the time, because it was a little dark out. He could see... It was dark. It was dark outside, but there was street lighting. There was ample lighting to see the gun going into the man's tube sock. The specific color, he didn't know. He found out later at the police station. But again, if he was making this story up, why would he not have just said, yes, it was a white tube sock, because he knew that information. And he got the sock when they were back at the police station. Well, it's not really beyond the realm of possibility, is it, that the defendant's testimony could be accurate and the officer's testimony could be inaccurate? I mean, in my opinion... Is there a 15-minute gap, an unrebutted 15-minute gap, when the defendant says, I was sitting in the squat car for 15 minutes and nobody did anything? I don't see how that's relevant to Officer Scudero's testimony. A lot of things were left unrebutted, weren't they? Yes, but not the essential elements of the crime. Well, the fact that there's questions raised, raises a question about the credibility, do they not? Everything, all of the evidence presented in the appeal were already raised and rejected by the actual trier of fact. This Court is well aware that it should not reweigh the evidence or credibility determinations and substitute its judgment for that of the trier of fact, even if there were some questions, because, yes, the defendant and the officer did have conflicting testimony. The judge heard that at the trial court. The judge weighed those credibility determinations and denied defendant's testimony and believed Officer Scudero. Did the trial judge really ever specifically say he believed the officer and not the defendant? I mean, in his ruling, he stated, so defendant's testimony was that he wore the same exact pair of ankle socks that he apparently kept somewhere, but two years later decided to wear the alleged evidence to court. And... Is it your position that having the same socks for two years is, per se, impressive? No, what I'm saying is a little bit unlikely. Then you have to do something. It is not impressive, although impressive to continue. On the other hand, he... He said this was a really important thing to the defendant, which it was, considering the fact that he didn't have any prior convictions at all. It's not really that unusual for him to try to defend himself by bringing in the socks. Is this... Well, perhaps not by bringing them in, but by wearing the evidence. It seems a little strange. Nonetheless, the court heard defendant, saw the defendant's socks, and said in his ruling, the socks defendant wore to court would not hold a gun for any length of time, but two presumably athletic socks with loose-fitting jogging pants are something that someone of relative youth could place in there in a fluid motion, thereby essentially saying, yes, the court believed Officer Scudero over defendant. He did not explicitly mean to say, I find... No, he did not. I haven't granted you that. I found this idea that the officer... It seems as if this case is about an officer observing two officers, but only one testified. An officer seeing this young man walking down the street, and at that point is when the defendant puts the gun in his sock. Right. Are you under the impression from reading the record that the defendant then was also aware of the police, or he was doing this without being aware that the police were observing him? I don't think it quite frankly matters. Officer Scudero did not testify to what he thought defendant knew. I'm sorry. No, go ahead. So defendant claims that he just walked over to this black car. But Officer Scudero's testimony was that he saw a defendant walking down the street. Whether or not he saw the officers doesn't really matter, because he saw what he believed to be a gun put in his sock. When defendant was then definitely made aware of the officers because he then approached their vehicle, Officer Scudero began to get out, and defendant fled, which I would also like to point out is indicative of guilt. Well, isn't it also a little strange, though, that if he had a gun that he would just keep it in his jacket or that outer garment rather than take it out and stick it in his sock so the police officer could see and put something in his sock? I mean, isn't that a little bit unusual? I mean, I can't pretend to know the defendant's frame of mind, but I do know officers often search people's clothes. I would just say that it would take any person's frame of mind. If they see the police officer, are they going to take the gun out of their pocket and stick it in their sock so the police officer can see him stick it in his sock, or are they going to wait and see if, you know, the police are going to come up to him anyway, right? That's what they were going to do. I mean, he didn't necessarily know that, but, yes, maybe he did know the police were going to come up. And then a reasonable person might believe that they're going to flisk his outer garment and not search his socks for a gun because, I mean, in all reality, it is less likely to have a gun placed, being kept in a sock than in an outer garment. But that's the presumption. I don't agree, isn't there? The testimony seems to split off at one point, but the testimony that it seems to be at least somewhat the same is when the officer says that he's chasing him and then this is the part that's similar. The defendant says he gets down on the street. Right, he claims to just voluntarily lay down on the ground. Well, I mean, that's not that improbable either, is it? But what I'm trying to say is the officer agreed that when he finally got to him, he was laying down on the street. Well, I'm pretty sure the officer actually said he had to reach him first and then they were on the ground. But by that time, all this conflicting testimony that's relevant to the actual crime had already occurred. He had the gun in his possession, and that's the relevant testimony. No, he didn't have the gun in his possession. The gun was thrown away, remember? No, the officer saw him have the gun in the possession. Yes, all right. I thought you meant that the officer, when he tackled him, got the gun. No, by that time he had reached back down into the sock and tossed it. But I would just like to point out that at this point, all reasonable inferences are to be allowed in favor of the prosecution. This trial court already heard all these credibility determinations and found Officer Scaduto credible. He was able to hear Officer Scaduto testify, hear a defendant testify, see these alleged ankle socks that he brought in, see the actual gun that was introduced as evidence, and found that Officer Scaduto was more credible. Would a reasonable police officer under the factual scenario of this case take a picture of this evidence to show this is where the gun was hidden? I honestly can't say what a reasonable officer would do or what their usual course of conduct would be when they find anything. Well, if you were a policeman, wouldn't you do that? I honestly can't say what I would do, but I will say that the defendant's contention that the police officer should have inventoried all of the defendant's clothing or the socks is a little bit out of the norm. That's like saying every single time an officer stops somebody for drug possession, they had to take all their clothes away and keep them in the police station in inventory. Not everybody puts their guns in their socks, so here you've got a peculiar factual circumstance. You would think that somebody might take a picture of it. I mean, maybe he could have, maybe he should have, but at this point... But he didn't. No, he did not. But he did take the gun in inventory and introduce it as evidence. At this point in time, we're not in the trial phase anymore. The trial court already found him to be credible. And it isn't simply an eyewitness case. There is a statement that was made. Right. Well, not only did he flee, but then he came back to the police station and said he got it from Melvin who got it from Ralph for safety. His testimony regarding seeing the gun, you're correct, is not only the fact that he saw him put it in the sock. These two things add to the likelihood of defendant's guilt and adds to the officer's credibility. This was memorialized. He was consistent in what he was saying. If we find, though, that the testimony is improbable, aren't we under an obligation, though, to look at it closely and not simply affirm because the state asks us to? Correct. This court is not a rubber stamp. But this testimony is not improbable and that is nowhere near the level of being contrary to human experience. The fact that somebody could walk and put a gun in their sock is just simply not that kind of evidence. But there are cases that clearly say if this reviewing court finds that the testimony is improbable and not common or not in what's the language about the? Contrary. Contrary to human experience, we have an obligation, do we not, then to reverse. And it has happened. It's not like there haven't been cases where the court has found the testimony is contrary to human experience. Right. And if it raises to that very high threshold, then yes, this court can reverse. But this is simply not that kind of case. It was an officer's testimony. His testimony is not unlikely. He saw the defendant put a gun in a sock and that's what he said if the trial court believed him. It was a small gun. It was a tube sock. And I think that was the testimony. Was there any testimony? The judge said it was small or something like that. Yes, it was. Well, the officers could describe the gun as being really small, about the size of a cell phone. It's a .25 caliber. I actually did look into the year. I mean, it's a .25 caliber gun. It's a very small gun, about the size of a cell phone, no matter if it was. This is actually a 5-year-old case, isn't it? I'm pretty sure it was 2013. Five years ago. Anything else you want to add? No. For all those reasons, we ask that you affirm defense conviction. Thank you. All right. Ms. Pugh, you may have some time now for your rebuttal. So you're telling us this man was actually innocent? I am saying that he was not proved guilty beyond a reasonable doubt. And so this is not a post-conviction position. But would you go so far as to say he's actually innocent? The standard is, was he proved guilty beyond a reasonable doubt? I don't know. I mean, the thing is that this is a case where there are so many questions that I don't feel confident saying either way what exactly happened here. But the standard here isn't. This is not the post-conviction. Well, if he didn't do it, why did he run away? You know, there are cases not in Illinois, but there's, I mean, I'm sure that you're all familiar with these cases, for instance, in Massachusetts and things, where there's been a lot of talk about why a young black man might run away from the police. Well, didn't he say that the police officer pulled out his gun right away? Yes. He said that the police, that, I mean, there's some confusion about what happened because Officer Scuduto said that he was called over, but also that he or his partner got out of the car, and the defendant said that he got out with the gun drawn. And so then he ran. But the officer didn't say that he ran. Oh, no, the officer didn't say that. The officer said they were going to stop him. No, but he had no idea why he was being stopped. He's a young black man walking alone on the street at night, and the officer's in a marched car, who knows what they're looking for. He has no idea if they're looking for a murderer. He has no idea. He gets scared. It's a foolish decision. It's not one that I didn't think any of us would ever make. But that's a decision that he made. And, yes, it does suggest that, you know, there's case law that suggests that this can be used to affect it, to indicate consciousness of guilt, but it can also just indicate consciousness of fear as well. And the thing that's very frustrating in this case is that, so we have an officer who told us. Is there any case that says that? About what? Well, there's a case in Massachusetts about. Any Illinois case that says that we can look at it as something other than consciousness of guilt? No, the Illinois cases are all, I mean, looking at it in terms of that it doesn't show guilt, but it can show consciousness of guilt. It can be considered as part of a bundle. But if you wanted to look at the case, Commonwealth v. Warren from 2016, I believe, in Massachusetts, which is kind of an interesting approach to all of this. Is that in your brief? No, it's not in my brief at all. And so if you'd like supplemental briefing, I'm happy to do it, or I can just throw it out here. But this case is frustrating, though, because, so we have an officer telling this sort of improbable story. And the state has it both ways. The state says, well, in a case where the officer tells a very thorough story, well, the officer told this great story, and this person is clearly guilty. The officer tells a bad story. Well, clearly he's not lying, because if he were lying, he would have told a better story. He would have told a better lie. Yeah, exactly. And so the defendant, it's a catch-22 for the defendant. And so there's no such thing as an officer telling a bad, giving bad testimony, because if the officer is giving bad testimony, that proves he's telling the truth. And so a defendant like this. Isn't that quite like Count Clark? No, it's an exaggeration, but the point is there that bad testimony is always twisted around to be used for the benefit of the state, not for the defendant. And as for his statement, there is a statement in the record, but this is the officer corroborating himself. This is not anything. This is an officer corroborating what he said at testimony. This is more like a prior consistent statement by the officer than it is something that the defendant agreed with. And so for all of these reasons, I urge this Court to look carefully at the officer's testimony, at the way he described everything. He did use his, he was describing very general things, using these very specific stylized words over and over again. What he was describing, the one fluid motion was not, was not the description of the actual is not specific. The words he used were specific, and he did not vary in a way that sort of raised a lot of questions. So for all of these reasons, we ask that this Court look very carefully at the evidence and find that our client's conviction should be reversed. Thank you very much. Thank you. The case was well-argued and well-briefed, and we will take it under advisement. And the Court will stand in recess for a few minutes.